UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA POGUE, individually and as representative and successor of interest of the ESTATE OF JOSEPH JIMENEZ,<br><br>         Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DEPUTY JASON HAYEK, SERGEANT DOE, CITY OF VISTA, VISTA FIRE PARAMEDIC DOE, and DOES 2–5 and 7–10,<br><br>         Defendants. | Case No.: 21-CV-309 TWR (MDD)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART THE CITY'S MOTION TO DISMISS, AND (2) DENYING THE COUNTY'S MOTION TO DISMISS**<br><br>(ECF Nos. 16, 17) |

  Presently before the Court are the Motions to Dismiss Plaintiff Tina Pogue's First Amended Complaint filed by Defendants the City of Chula Vista (the "City") ("City Mot.," ECF No. 16) and the County of San Diego (the "County") and Deputy Jason Hayek ("Cty. Mot.," ECF No. 17) (together, the "Motions"), as well as Plaintiff's Responses in Opposition to ("Cty. Opp'n," ECF No. 18; "City Opp'n," ECF No. 19), and Defendants'

/ / /

/ / /

/ / /

1

Replies in Support of ("City Reply," ECF No. 20; "Cty. Reply," ECF No. 22[1]) the Motions. The Court determined that the Motions were appropriate for resolution on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 21.) Having carefully reviewed Plaintiff's First Amended Complaint ("FAC," ECF No. 13), the Parties' arguments, and the relevant law, the Court **GRANT IN PART AND DENIES IN PART** the City Motion and **DENIES** the County Motion as follows.

## BACKGROUND

### I. Factual Allegations[2]

On February 19, 2020, residents of the City reported that Decedent Joseph Jimenez was in distress and acting in an unusual manner. (*See* FAC ¶ 20; *see also id.* ¶ 22.) Defendant Deputy Hayek, who did not have a partner with him, responded and approached Decedent to arrest him. (*See id.* ¶ 21.) Although "not resistive or assaultive," Decedent was unable to control his bodily movement or understand or comply with Deputy Hayek's commands. (*See id.* ¶ 22.) Deputy Hayek therefore applied a carotid restraint, (*see id.* ¶ 23), rendering Decedent unconscious. (*See id.* ¶ 24.)

Rather than follow the San Diego Sheriff's Department's ("SDSD") policy of rolling Decedent on his side, checking his pulse, or monitoring his breathing, Deputy Hayek maintained his restraint and kept his weight on Decedent, who remained face down in the street. (*See id.* ¶ 25.) When she arrived on the scene, Sergeant Doe also failed to comply with SDSD policies, instead providing a "max restraint" to be applied tightly around Decedent's ankles. (*See id.* ¶ 26.)

---

[1] Although the County's Reply was untimely under the undersigned's Standing Order for Civil Cases, *see id.* § II.B.2, the Court finds the delay was due to excusable neglect because there is no danger of prejudice or indication of bad faith in the minor delay. *See Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (listing the excusable neglect factors). Although the Court properly may consider the County's untimely Reply, the arguments it presents do not alter the Court's reasoning or conclusions.

[2] For purposes of Defendants' Motions, the facts alleged in Plaintiff's First Amended Complaint are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (stating that, in ruling on a motion to dismiss, the court must "accept all material allegations of fact as true").

Next on the scene was the Vista Fire Department, including Vista Fire Paramedic Doe ("Paramedic Doe"). (*See id.* ¶¶ 27, 29.) Although Paramedic Doe attempted to communicate with Decedent and evaluate his condition, their care was impeded by Deputy Hayek and other deputies, who continued to restrain Decedent. (*See id.* ¶¶ 27–29.) Paramedics strapped Decedent prone on a gurney and placed a spit mask on his head. (*See id.* ¶ 31.) Decedent remained handcuffed and wrapped in the max restraint while he was transported to the hospital. (*See id.*)

When Decedent arrived at the hospital, he was not breathing. (*See id.*) Despite resuscitative measures, Decedent was taken off life support and passed away on February 24, 2020. (*See id.* ¶ 32.) The County Coroner determined that Decedent's cause of death was anoxic ischemic encephalopathy, meaning that Decedent lost brain function as a result of oxygen deprivation. (*See id.* ¶ 33.)

## II.   Procedural Background

Plaintiff, Decedent's mother, (*see* FAC ¶ 5), initiated this action on February 19, 2021, by filing her original Complaint. (*See generally* ECF No. 1 ("Compl.").) After Defendants moved to dismiss, (*see* ECF Nos. 7, 8), Plaintiff filed the operative First Amended Complaint, alleging eight causes of action for (1) excessive force in violation of 42 U.S.C. § 1983 against Deputy Hayek and Does 2 through 5 (the "Deputy Defendants"); (2) deliberate indifference to Decedent's medical needs in violation of 42 U.S.C. § 1983 against all Defendants except for the City and the County; (3) supervisory liability under 42 U.S.C. § 1983 against Sergeant Doe and any other supervisory Doe Defendants; (4) *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) ("*Monell*"), violations against the City and County pursuant to 42 U.S.C. § 1983; (5) wrongful death/medical negligence against the City, Paramedic Doe, and Does 7 through 10 (together, the "City Defendants"); (6) wrongful death/negligence against the Deputy Defendants; (7) battery against the County, Deputy Hayek, and Does 2 through 5 (together, the "County Defendants"); and (8) violation of the Bane Civil Rights Act (the "Bane Act"), Cal. Civ. Code § 52.1, against the Deputy Defendants. (*See generally* FAC.)

3

The City Motion followed on June 24, 2021, (*see generally* ECF No. 16), and the County Motion on June 25, 2021. (*See generally* ECF No. 17.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

1    "If a complaint is dismissed for failure to state a claim, leave to amend should be
2 granted 'unless the court determines that the allegation of other facts consistent with the
3 challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight*
4 *Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well*
5 *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in
6 denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton*
7 *Indus.*, 912 F.2d 291, 296 (9th Cir. 1990)).

## ANALYSIS

### I. The City Motion

The City seeks dismissal pursuant to Rule 12(b)(6) of (1) Plaintiff's *Monell* claim against it, (*see generally* City Mot.; ECF No. 16-1 ("City Mem.") at 6, 8–14); and (2) Paramedic Doe and Does 7 through 10 (the "Paramedic Does").  (*See generally* City Mot.; City Mem. At 1, 14–15.)

#### A. Monell *Claim*

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. Cty. Of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (quoting *Monell*, 436 U.S. at 694).  "[P]olicies can include written policies, unwritten customs and practices, [and] failure to train municipal employees on avoiding certain obvious constitutional violations[.]" *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).

Here, Plaintiff alleges that the "City failed to adequately train paramedics and other personnel[] . . . and failed to institute appropriate policies[] regarding constitutional procedures for the protection of detainees[;] access to and proper medical treatment for detainees[;] intervention and communication when medical care is impeded[; and] the evaluation, care, treatment, and transportation of detainees[,] including those of impaired mental or physical capacity or those who are under the influence of a controlled substance." (*See* FAC ¶ 70; *see also id.* ¶¶ 67–69; City Opp'n at 4.)  The City argues that Plaintiff's *Monell* claim is susceptible to dismissal because Plaintiff fails to allege any facts

supporting her "threadbare" *Monell* claim under Rule 12(b)(6), (*see* City Mot. at 11–14), and because Plaintiff combines her allegations against the City and County in violation of Rule 8(a)(2).  (*See* City Mot. at 14.)   The Court rejects this second argument outright.  Paragraph 70 of Plaintiff's First Amended Complaint clearly outlines the specific failures Plaintiff attributes to the City.  (*See generally* FAC ¶ 70.)

As for the adequacy of Plaintiff's allegations, "[t]o allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez*, 993 F.3d at 1153–54 (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 1154 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Generally, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *See id.* at 1154 (quoting *City of Canton*, 489 U.S. at 390–91) (citing *Blankenhorn*, 485 F.3d at 485).   However, "in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Id.* at 1153 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405–06 (1997)); *see also id.* at 1154 ("As to the single instance category, generally, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983." (citing *Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996))).

The Supreme Court, for example, has "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *See Connick v. Thompson*, 563 U.S. 51, 63 (2011) (citing *Canton*, 489 U.S. at 390 n.10).  A single shooting in this instance may suffice because, "[g]iven the

known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' . . . a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." *See id.* at 63–64 (quoting *Bryan Cty.*, 520 U.S. at 409). In this hypothetical scenario, there is an "obvious need for specific legal training" because "[a]rmed police must sometimes make split-second decisions with life-or-death consequences" and "[t]here is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force." *See id.* at 64. Further, "in the absence of training, there is no way for novice officers to obtain the legal knowledge they require." *See id.* On the other hand, "[f]ailure to train prosecutors in their *Brady* obligations does not fall within the narrow range of *Canton*'s hypothesized single-incident liability" because "[a]ttorneys are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment." *See id.*

The Court concludes that Plaintiff fails sufficiently to allege a *Monell* claim against the City for failure to train based on the single incident detailed in her First Amended Complaint. Although Plaintiff invokes "constitutional procedures," (*see* FAC ¶ 70), her allegations boil down to the provision of medical services. (*See id.* (alleging failure to train regarding "access to and proper medical treatment for detainees" and "intervention and communication when medical care is impeded").) In other words, the constitutional violation asserted here—deliberate indifference to medical care, (*see id.* ¶¶ 43–50)—intersects with the specialized medical training that paramedics receive. This renders Plaintiff's claims more similar to those against prosecutors who are not provided additional training regarding *Brady* obligations than to those against armed police officers who are not provided any training as to the appropriate use of deadly force. *See Connick*, 563 U.S. at 63–64.

/ / /

This is not to say that the City's decision to hire trained paramedics insulates the City from liability. *See, e.g.*, *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1187–88 (9th Cir. 2006) (concluding that the defendant county's policy of hiring professional doctors and nurses to work in a correctional treatment facility did not insulate the county from *Monell* liability premised on an alleged failure adequately to train those medical professionals on documenting patients' conditions and monitoring and assessing their need to be transferred to a facility with a higher level of medical care). Based on the single alleged deficiency identified in Plaintiff's First Amended Complaint, however, it is not clear that the alleged constitutional deprivations resulted from a faulty training program (or policies) as opposed to the faulty training of a particular paramedic. *See Benavidez*, 993 F.3d at 1154 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." (quoting *City of Canton*, 489 U.S. at 390–91) (citing *Blankenhorn*, 485 F.3d at 485)); *cf. Long*, 442 F.3d at 1188–89 (reversing the district court's summary adjudication of *Monell* claim in favor of the defendant county based on failure to train medical staff where the county knew that the medical unit at which the decedent was housed was not equipped to care for patients like the decedent and the decedent had been seen over fifty times by medical staff in the eighteen days prior to his death). The Court therefore concludes that Plaintiff has failed adequately to allege a *Monell* claim based on a "failure to train" or "failure to institute policies" grounded solely on Decedent's single interaction with the City's Paramedic Does.

Although Plaintiff urges the Court to allow her to proceed to discovery, at which point she can "obtain and evaluate relevant policies and training[,]" (*see* City Opp'n at 4), the Ninth Circuit has cautioned that the Supreme Court's "case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery." *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (citing *Twombly*, 550 U.S. at 559).
/ / /

Accordingly, the Court **GRANTS** the City Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's *Monell* cause of action.

### B. Doe Defendants

The City argues that the Paramedic Does must be dismissed because the conduct attributed to each of them cannot be identified as a result of the improper grouping of claims against the Does and failure to make specific allegations against each of them. (*See* City Mot. at 14–15.) Plaintiff responds that the "allegations . . . include specific conduct which Plaintiff contends violates the law," (*see* City Opp'n at 5 (citing FAC ¶¶ 27–30)), and that Deputy Hayek's body cam video footage "depicts several Vista paramedics but their name badges are indecipherable." (*See id.*)

Here, Plaintiff alleges that "Paramedic Doe and Does 7–10 provided minimal and insufficient medical care to Decedent" and "took no action to obtain access to provide the sufficient care or advocate for their patient despite knowing that Decedent's respiratory and circulatory systems were greatly impaired." (*See* FAC ¶ 29.) Plaintiff adds that "[t]he rank or role of each Doe is also currently unknown and these Does may include supervisors or persons with varying medical licenses . . . ." (*See id.* ¶ 15.) Particularly given that Plaintiff alleges an absence of action common to each of the Paramedic Does, these allegations suffice at this stage in the proceedings. Further, the Court concludes that it would be premature to dismiss the Paramedic Does at this early stage. *See Mohammad v. Cal. Dep't of Corr.*, No. 14-CV-03837-BLF, 2015 WL 720721, at *1 (N.D. Cal. Feb. 18, 2015) ("[A]n action should not be dismissed without giving Plaintiff an opportunity to identify the defendants through limited discovery, 'unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds.'" (quoting *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)) (first citing *Youngblood v. 5 Unknown Cim Corr. Officers*, 536 Fed. App'x 758 (9th Cir. 2013); then citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); then citing Fed. R. Civ. P. 45; finally citing Fed. R. Civ. P. 26(d)); *accord Mitchell v. City of Henderson*, No. 2:13-CV-01154-APG, 2015 WL 427835, at *8 & n.76 (D. Nev. Feb. 2, 2015) (quoting *Gillespie*,

629 F.2d at 642))); *see also Terpin v. AT&T Mobility, LLC*, No. 218CV06975ODWKSX, 2020 WL 5369410, at *7 (C.D. Cal. Sept. 8, 2020) ("The Court finds it premature to dismiss Doe defendants 1–10, as they are permitted by Local Rule . . . and facts may develop during discovery which enable [the plaintiff] to identify the Does."); *accord Caron v. W. United Ins. Co.*, No. 2:11-CV-01348-GMN, 2011 WL 4527954, at *2 (D. Nev. Sept. 28, 2011). Accordingly, the Court **DENIES** the City's Motion to dismiss the Paramedic Does.

## II.     The County Motion

Under Rule 12(b)(6), the County and Deputy Hayek move for dismissal of (1) Plaintiff's third cause of action for supervisory liability, (*see generally* Cty. Mot.; ECF No. 17-1 ("Cty. Mem.") at 3–5); (2) Plaintiff's eighth cause of action for violation of the Bane Act, (*see generally* Cty. Mot.; Cty. Mem. at 6–8); and (3) Sergeant Doe and Does 2 through 5.  (*See generally* Cty. Mot.; Cty. Mem. at 8.)

### A.     *Supervisory Liability*

The Parties agree that a supervisor may be held liable under section 1983 if the supervisor personally participated in the alleged constitutional violation(s) or knew of the alleged violation(s) and failed to intervene to prevent them.  (*Compare* Cty. Mem. at 3 (quoting *Maxwell v. Cty of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013)), *with* Cty. Opp'n at 4 (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).)  Nonetheless, the County urges dismissal of Plaintiff's supervisory liability cause of action on the following grounds: (1) Plaintiff fails to allege that "any Supervisory Defendant had any direct involvement with [Decedent]," (*see* Cty. Mem. at 4 (citing FAC ¶¶ 55–60)); (2) "Plaintiff[] lump[s] Deputy Hayek's supervisor and Paramedic Doe's supervisors together, such that it is impossible to determine the claims against either[,]" (*see id.* (citing FAC ¶¶ 55–56, 59)); and (3) "the minimal descriptions given of Supervisory Defendant Sergeant Doe in the FAC fails to allege facts of her committing an unconstitutional act." (*See id.* at 5.)  Plaintiff responds that "Sergeant Doe observed [the excessive force being used by Deputy Hayek and other SDSD deputies], failed to intervene in stopping this

/ / /

conduct[,] and even encouraged and suggested additional acts of excessive force." (*See* Cty. Opp'n at 4.)

The Court must agree with Plaintiff. First, Plaintiff alleges that Sergeant Doe provided Deputy Hayek and other Doe Deputies a max restraint to be used on Decedent, thereby compounding the alleged excessive force Decedent suffered. (*See* FAC ¶¶ 26, 54.) Even if these allegations did not suffice to establish Sergeant Doe's "direct involvement" with Decedent, Plaintiff also alleges that Sergeant Doe failed to intervene to prevent the application of excessive force to Decedent, which is a second basis for supervisory liability that the County concedes is available. (*See* Cty. Mem. at 3.) Second, the individual conduct Plaintiff attributes to Sergeant Doe is clear: Sergeant Doe failed to intervene to prevent the use of the allegedly excessive force the Doe Deputies were using, (*see* FAC ¶¶ 28, 55–56), and even suggested that Deputy Hayek apply a max restraint, which she provided. (*See* FAC ¶¶ 26, 54.) Third and finally, the "constitutional standard" Sergeant Doe is alleged to have violated is Decedent's right to be free from use of excessive force. (*See id.* ¶¶ 35–42.)

Having rejected the County's arguments, the Court concludes that Plaintiff adequately alleges a claim for supervisory liability against Sergeant Doe. *See, e.g., Garlick v. Cty. of Kern*, 167 F. Supp. 3d 1117, 1161 (E.D. Cal. 2016) (denying summary judgment on claims for failure to intervene where "a reasonable jury could conclude that the officers' application of body-weight to [the decedent]'s back continued for approximately ten minutes, thus, during that time, officers had a realistic opportunity to intervene in the allegedly violative conduct within the time [the decedent] was restrained"); *Eklund v. Cty. of Orange*, No. SACV080099DOCRNBX, 2009 WL 10670621, at *7 (C.D. Cal. May 11, 2009) (denying summary judgment in favor of a sergeant on a supervisory claim for excessive force where a factual dispute existed as to whether the sergeant had heard complaints from the plaintiff that her handcuffs were too tight). The Court therefore **DENIES** the County Motion to the extent it seeks dismissal of Plaintiff's third cause of action for supervisory liability.

**B.     Bane Act**

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230, 1232 (2007)). With respect to excessive force claims under the Bane Act, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged[, although] . . . the Bane Act [does] require[] . . . 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *See id.* at 1043 (quoting *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 799–802 (2017)).

Deputy Hayek maintains that Plaintiff fails to allege that he had the requisite specific intent, (*see* Cty. Mot. at 7), while Plaintiff contends that her allegations suffice. (*See* Cty. Opp'n at 6–7.) "The specific intent inquiry for a Bane Act claim is focused on two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 803). "So long as those two requirements are met, specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right. *Id.* (quoting *Cornell*, 17 Cal. App. 5th at 803). In an excessive force case such as this one, "Plaintiff must show that '[the Doe Deputies] intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *See Sacapano v. Cty. of San Bernardino*, No. CV 19-0679 CBM (KKX), 2021 WL 3523496, at *7 (C.D. Cal. Feb. 16, 2021) (alteration in original) (quoting *Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir. 2018)).

/ / /

Deputy Hayek concedes the first of these requirements, but contests whether Plaintiff's allegations meet the second.[3] (*See* Cty. Mot. at 7.) While Deputy Hayek contends that "Plaintiff[] do[es] not identify any facts showing Deputy Hayek applied excessive force with a criminal intent of violating [Decedent]'s Constitutional rights," (*see id.*), he fails to address whether Plaintiff adequately alleges that he exhibited "reckless disregard" of Decedent's rights. *Cf. Sandoval*, 912 F.3d at 520. In her Opposition, (*see* Cty. Opp'n at 6–7), Plaintiff identifies certain allegations that could evidence Deputy Hayek's reckless disregard of Decedent's rights under the Fourth and Fourteenth Amendments to be free from excessive force, including that Deputy Hayek applied the carotid restraint without attempting de-escalation or lesser means of force, (*see* FAC ¶ 23), and continued to apply considerable force to Decedent even after rendering him unconscious. (*See id.* ¶¶ 24–25.) The Court therefore **DENIES** the County Motion as to Plaintiff's eighth cause of action against Deputy Hayek under the Bane Act. *See, e.g., Sacapano*, 2021 WL 3523496, at *7 (denying the defendants summary judgment where "a reasonable juror could conclude that [the d]efendants acted unreasonably under the Fourth Amendment when [one of the deputy defendants] 'pushed [the plaintiff], forcefully and violently, out of his way,' and [another deputy defendant] 'raised his hands up high' and hit [the p]laintiff with the butt of his gun in her nose"); *Est. of Smith v. Holslag*, No. 16-CV-2989-WQH-MSB, 2020 WL 7863428, at *10–11 (S.D. Cal. Dec. 31, 2020) (denying summary judgment on a Bane Act claim on the grounds that "a reasonable juror could

---

[3] In the Reply, Deputy Hayek also argues for the first time that Plaintiff improperly asserts a claim under the Bane Act that is wholly derivative of Decedent's. (*See* Cty. Reply at 3–4.) Even if this argument were properly raised in the Reply, "Defendants' position is based on an erroneous interpretation of *Bay Area Rapid Transit Dist[rict] v. Superior Court* ("*BART*"), 38 Cal. App. 4th 141, 144 (1995)—an interpretation that district courts in the Ninth Circuit have repeatedly rejected." *J.G. v. City of Colton*, No. 5:18-CV-02386-RGK-SP, 2019 WL 4233582, at *3 (C.D. Cal. July 1, 2019) (citing *Medrano v. Kern Cty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1016 (E.D. Cal. 2013)). The case on which Deputy Hayek relies, *Bresaz v. County of Santa Clara*, 136 F. Supp. 3d 1125 (N.D. Cal. 2015), relies on *BART* to reach the conclusion held by a minority of district courts in this state. The Court therefore declines to conclude that Plaintiff lacks standing to assert her Bane Act cause of action on Decedent's behalf. *See J.G.*, 2019 WL 4233582, at *3.; *see also Medrano*, 921 F. Supp. 2d at 1016.

conclude that [the sergeant defendant] acted with reckless disregard for [the decedent]'s rights" where the sergeant defendant "shot [the decedent] within a matter of seconds and without warning, even though [the decedent] was unarmed, was not threatening anyone, and did not pose a danger to [the sergeant defendant] or anyone else"); *Vos v. City of Newport Beach*, No. SACV1500768JVSDFMX, 2020 WL 4333656, at *10 (C.D. Cal. June 8, 2020) (denying the defendants summary judgment on successor-in-interests' Bane Act claim where there existed "a triable issue of fact as to whether the officers acted with reckless disregard for [the decedent's] constitution rights and therefore [acted] with specific intent" because "a reasonable jury could conclude that [the decedent was not an immediate threat to officers such that the use of deadly force was warranted" and "police never attempted to communicate with [the decedent]").

### C.   Doe Defendants

Finally, like the City, *see supra* Section I.B, the County argues for dismissal of the County Doe Defendants—Sergeant Doe and Does 2 through 5—because it is unclear what specific actions each took to violate Decedent's constitutional rights. (*See* Cty. Mem. at 8.) Again, Plaintiff responds that she has alleged specific conduct. (*See* Cty. Opp'n at 8 (citing FAC ¶¶ 27–30).)

Here, Plaintiff alleges that Sergeant Doe "failed to comply with SDSD Policies related to monitoring a person who [h]as been rendered unconscious by the carotid restraint" and instead "provide[d] a 'max restraint' to the Deputies[,] which [wa]s applied tightly around Decedent's ankles, further restraining his circulation." (*See id.* ¶ 26.) Further, "SDSD deputies, including Does 2–5, continued to use control holds on Decedent who was also handcuffed behind his back and ha[d] a max restraint on his ankles." (*See id.* ¶ 28.) "No one present, including supervisors, or Does 1–10, took any action to intervene, correct, or mitigate the injury cause by this conduct." (*See id.*) Plaintiff has clearly provided individualized factual allegations as to Sergeant Doe's conduct, and Plaintiff alleges that Doe Defendants 2 through 5 engaged in identical conduct, *i.e.*, restraining Decedent and failing to intervene to ensure that Decedent was rolled on his side,

had his pulse taken, or had his breathing monitored consistent with SDSD policies. (*See id.* ¶¶ 25, 28.) Again, as with the allegations against the City Doe Defendants, these allegations suffice at the pleading stage. *See supra* Section I.B. Accordingly, the Court **DENIES** the County Motion to dismiss Sergeant Doe and Doe Defendants 2 through 5.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** the City Motion (ECF No. 16) and **DENIES** in its entirety the County Motion (ECF No. 17). Specifically, the Court **GRANTS** the City Motion as to Plaintiff's fourth cause of action under *Monell* and **DISMISSES WITHOUT PREJUDICE** that cause of action against the City. Plaintiff **MAY FILE** an amended complaint curing the deficiencies identified in this Order within fourteen (14) days of the electronic docketing of this Order. *Should Plaintiff decline timely to file an amended complaint, this action will proceed on Plaintiff's surviving causes of action in her First Amended Complaint.*

**IT IS SO ORDERED**.

Dated: January 19, 2022

Honorable Todd W. Robinson
United States District Court